E-filing

## PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE COUSTODY

Name: __Mairs__                    __David__                    __L.__
         (Last)                      (First)                    (Initial)

Prisoner Number: __T25433__

Institutional Address: __1ᴴO8⁴  SQSP SAN QUENTIN, CA, 94974__

---

### UNITED STATES DISTRICT CCOURT

### NORTHERN DISTRICT OF CALIFORNIA

__DAVID LOUIS MAIRS__
Full Name of Petitioner

                                    Case No. (to be provided by the
                                    Clerk of court)

**JF**

**(PR)**

    vs.

__ROBERT AYERS (WARDEN SQ)__                    ___PETITION FOR A WRIT OF HABEAS CORPUS
       Name of Respondent
       (Warden or jailor)

---

### Read Comments Carefully Before Filling In

#### When And Where To File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted or sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined Habeas L. R. 2254-3(b).

1

<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody your are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered

A.    <u>INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

1.  What sentence are you challenging in this petition

(a)  Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland)

<u>SUPERIOR COURT</u>                          <u>COUNTY OF MARIN</u>
           Court                                     Location

(b)  Case number, if known <u>SC132965A</u>

(c)  Date and terms of sentence <u>7 years</u>

(d)  Are you now in custody serving this term?  (Custody means being in jail, on parole or probation, etc.)  Yes ☒  No ☐

Where? <u>San Quentin State Prison</u>            <u>San Quentin, CA</u>
           (Name of Institution)                        (Address)

2   For what crime were you given this sentence?  (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code number if known.  If you are challenging more than one sentence, you should file a different petition for each sentence.)

<u>P.C. §§ 459, 667.5(B)</u>
<u>BURGLARY AND ONE PRIOR</u>

3   Did you have any of the following?

Arraignment: Yes ☒ No ☐  Preliminary Hearing Yes ☒ No ☐  Motion to Suppress: Yes ☐ No ☒

4    How did you plea?

Guilty _____ Not Guilty ☒_____ Nolo Contendere _____

Any other plea (specify) _____

5    If you went to trial, what kind of trial did you have?

Jury ☒  Judge alone ☐  Judge alone on a transcript ☐

6    Did you testify at your trial?  Yes ☐  No ☐

7    Did you have an attorney at the following proceedings:
(a)    Arraignment  Yes ☒  No ☐
(b)    Preliminary hearing  Yes ☒  No ☐
(c)    Time of plea  Yes ☒  No ☐
(d)    Trial  Yes ☒  No ☐
(e)    Sentencing  Yes ☒  No ☐
(f)    Appeal  Yes ☒  No ☐
(g)    Other post-conviction proceeding  Yes ☒  No ☐

8    Did you appeal your conviction?  Yes ☒  No ☐
(a)    If you did, to what court(s) did you appeal?

| | | Year | Result |
|---|---|---|---|
| Court of Appeal | Yes ☒ No ☐ | Nov. 15, 2005 | Judgment Affirmed |
| Supreme Court of California | Yes ☒ No ☐ | unknown | Hearing denied |
| Any other court | Yes ☐ No ☐ | | |

(b)    If you appealed, where the grounds the same as those that you are raising in this petition?  Yes ☒  No ☐

(c)    Was there an opinion?  Yes ☒  No ☐

(d)    Did you seek permission to file a late appeal under Rule 31(a)  Yes ☐  No ☒

If you did, give the name of the court and the result:

9    Other than appeal, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?  Yes ☒  No ☐

3

NOTE: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if the petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a)    if you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.    Name of Court Marin County Superior Court

Type of Proceeding Habeas corpus

Grounds raised (Be brief but specific):

a.   Cunningham

b.   _____

c.   _____

d.   _____

Result Denied                                          Date of Result March 28, 2007

II.    Name of Court California Supreme Court

Type of Proceeding Habeas corpus

Grounds raised (Be brief but specific):

a.   Cunningham

b.   The lower courts abused their discretion in denying the writ

c.   _____

d.   _____

Result Denied                                          Date of Result Feb 27, 2008

III.    Name of Court _____

Type of Proceeding _____

Grounds raised (Be brief but specific):

a.   _____

b.   _____

c.   _____

d.   _____

Result _____                                     Date of Result _____

4

(b)  Is any petition, appeal or other post-conviction proceeding now pending in any

court?.                          Yes ☐  No ☒

_____

(Name and location of court)

B.    GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully.  Give facts to
support each claim.  For example, what legal right or privilege were you denied?  What happened?
Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you
nee more space.  Answer the same questions for each claim.

Note  You must present ALL your claims in your first federal habeas petition.  Subsequent
petitions may be dismissed without review on the merits.  28 U.S.C. § 2244(b); McCleskey v. Zant,
499 US. 467, 111 S.Ct. 1454, 113 L. Ed. 2nd 517 (1991)

Claim One:  The sentencing court's imposition of the aggravated term in this case, violates

petitioner's constitutional rights to a finding of aggravation by the jury (RT vol. V, pg. 337).

Supporting Facts:   In imposing the aggravated term, this court use factors not

found to be true by the jury. Ironically, at sentencing this court addressed the question of

imposing the aggravating term in the absence of a jury finding (Exhibit 'A'; RT vol. V, pg. 324).

In deciding this court should impose the aggravated term, the court concluded "our sentencing

laws are within the guidelines established by Blakely (RT. Vol. V, pg. 325, li. 17-20).

Cunningham v. California, 2007 DJDAR 1003; In re Ward, (1966) 64 C. 2nd 672, 675

Claim Two:   The Superior Court abused it discretion in denying petitioner's Cunningham

claims on the bases that Cunningham is not retroactive.

Supporting Facts:   Cunningham is not a new rule, but clarification of the Blakey

rule.  In Cunningham, the court advises that California sentencing law also come under the

Blakey rule.  As mentioned supra the sentencing court in this case debated the application of

Blakey in this case and concluded that Blakey did not apply.  Cunningham simply demands that Blakey dose apply in California.  Cunningham v. California 2007 DAR 1003

Claim Three: _____

_____

Supporting Facts: _____

_____

_____

_____

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why

_____

_____

_____

List by name and citation only, any cases that you think are close factually to yours so that the are an example of the error you believe occurred in your case.  Do no discuss the holding or reasoning of these cases:

_____

_____

_____

Do you have an attorney for this petition    yes ☐   no ☒

If you do, give the name and address of your attorney:

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

Executed on <u>March 21, 2008</u>         _____
              Date                              Signature of Petitioner

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

DAVID LOUIS MAIRS

                            Plaintiff

    vs.

ROBERT AYERS (WARDEN SQ)

                          Defendant

**CASE NUMBER:**

**PRISONER'S**
IN FORMA PAUPERIS
**APPLICATION**

I, <u>DAVID LOUIS MAIRS</u>, declare that I am the plaintiff in the above-entitled case and that, the information I offer throughout this application is true and correct. I offer this application in support of my request to proceed without being required to prepay the full amount of fees, costs or give security. I state that because of my poverty I am unable to pay the costs of this action or give security, and that I believe that I am entitled to relief

In support of this application, I provide the following information:

1.  Are you currently employed    ☐ Yes    ☒ No

If the answer is "Yes" state both your gross and net salary or wages per month, and give the name and address of your employer:

Gross: _____        Net: _____

Employer: _____

_____

If the answer is "no" state the date of your last employment, the amount of the gross and net salary and wages per month which you received. (If you are imprisoned, specify the last place of employment prior to imprisonment.)

_____

_____

2.  Have you received, within the past twelve (12) months, any money from any of the following sources:

    a.    Business, profession or other self-employment    ☐ Yes  ☒ No
    b.    Income for stocks, bonds or royalties?    ☐ Yes  ☒ No
    c.    Rent payments, interest or dividends    ☐ Yes  ☒ No

d.    Pensions, annuities or life insurance payments    ☐ Yes  ☒ No
e.    Federal or State welfare payment, Social Security    ☐ Yes  ☒ No
       Or other government source?

In the answer is "Yes" to any of the above, describe each source of money and state the amount received from each.

_____

_____

3.  Are you married?          ☒ Yes          ☐ No

Spouse's Full Name: _____

Spouse's Place of Employment: _____

Spouse's Monthly salary, Wages or Income:

Gross: <u>unknown</u>_____    Net: <u>unknown</u>

4.  a. List amount you contribute to your spouse's support:

$0_____

    b.    List the persons other than your spouse who are dependent upon you for support and indicate how much you contribute toward their support:

<u>none</u>_____

<u>none</u>_____

5.  Do you own or are you buying a home    ☐ Yes          ☒ No

Estimated Market Value: $_____    Amount of Mortgage: $_____

6.  Do you own an automobile?          ☐ Yes    ☒ No

Make: _____    Year: _____    Model: _____

Is it financed? ☐ Yes  No If so, Total due: $_____

Monthly Payments: $_____

7.  Do you have a bank account?  (If you are a prisoner, include funds in your prison account, and provide the certificate attached, signed by an officer of the prison)
    ☐ Yes    ☒ No

Name(s) and address(es) of bank: _____

Present balance(s): $ _____

Do you own any cash?    ☐ Yes  ☒ No    Amount: $ _____

Do you have any other assets?  (If "yes," provide a description of each asset and its estimated market value.)

☐ Yes  ☒ No

8.  What are your monthly expenses?

Rent: $0 _____    Utilities: $0

Food: $0 _____    Clothing: $0

Charge Accounts:

        Total Owed On

| Name of Account | Monthly Payment | This Account |
|---|---|---|
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |

Do you have any other debts?  (List current obligations, indicating amounts and to whom they are payable).

____  none _____

_____

I consent to prison officials withdrawing from my trust account and paying to the court the initial partial filing fee and all installment payments required by the court.

I declare under penalty of perjury that the foregoing is true and correct and understand that a false statement herein may result in the dismissal of my claims.

____  March 21, 2008 _____        _____

        DATE                SIGNATURE OF APPLICANT

Reporter Transcript Exhibit 'A'

```
 1   MONDAY, JULY 12, 2004                 9:00 O'CLOCK A.M.
 2                    P R O C E E D I N G S
 3                       ---o0o---
 4        THE COURT:  David Mairs, Jr., Case 132965.
 5   Defendant is present, represented by Mr. Oliveros.
 6   Ms. Frugoli for the People.  Jessica Fort for probation,
 7   assigned to this courtroom.
 8        We have this on for sentencing.  I also have been
 9   advised that the defense is requesting and inviting the
10   Court to strike his prior violent felony, which was a 211
11   robbery, and we should address that matter first before we
12   proceed to sentencing.
13        In that regard, I've read the pleadings that have been
14   filed in this matter in support and opposition to the
15   request; specifically, I've reviewed the defendant's request
16   and the People's opposition and the declaration of Deputy
17   District Attorney Howard Skebe in opposition to the request
18   to strike the prior.
19        I would, as a tentative ruling, indicate that I'm not
20   inclined to strike the prior; however, I'll hear from
21   Mr. Oliveros, primarily, and then, Ms. Frugoli, if she
22   wishes, in response.
23        Mr. Oliveros?
24        MR. OLIVEROS:  Yes, your Honor.  As I stated in my
25   papers, we're asking the Court to exercise its discretion to
26   dismiss the strike which was alleged and admitted in the
27   Information.
28        Mr. Mairs does have a history.  The priors involve some
```

314

1   violence. The case before the Court, jury trial involved

2   the theft of some hole saw blades, and I don't want to

3   recite the facts of the whole trial. We all were here and

4   we all know it.

5       But the Court considers the sentence coupled with the

6   nature of the conviction, I believe that sentence would be

7   disproportionately -- unjustly disproportionate to the

8   actual conviction.

9       If you look at the fact the hole saw blades were

10  recovered, so there was no actual loss to the victim,

11  Jackson's Hardware Store. You look to Mr. Mairs' prospects

12  in that Mr. Mairs has an ongoing drug problem.

13      Now, the probation report indicates that he had been

14  clean for some time. However, a person who knows drug

15  addicts, knows it's a life long battle. A person who is a

16  drug addict doesn't simply become clean and that's it.  A

17  drug addict does go through relapses and, also, a drug

18  addict doesn't completely get rid of some of the other

19  choices that -- some of the other habits that they've had in

20  their past as far as decision making choices in their life.

21      Mr. Mairs comes before the Court to let you know that he

22  does have prospects. You know that he's an electrician.  He

23  does have family, and I want to, with the Court's

24  permission, allow either his adopted mother or father, the

25  Banducci's, who are present in the courtroom, I'd like to

26  give them an opportunity to speak and address the Court for

27  a few minutes.

28      This is a case in which Mr. Mairs does show some

1   promise. He did transfer into the program pod, the C Pod.

2   He's doing well there, and the information I have now is

3   that he has been accepted into the CURA program, and the

4   CURA program is a longterm residential treatment facility.

5   It's similar to the Delancy Street program, which is a

6   highly structured, longterm program, which I believe is a

7   minimum of two years.

8       The CURA program is an 18-month residential treatment

9   facility, so if the Court is prepared to grant the request

10  to dismiss the strike and allow him to be placed on

11  probation, Mr. Mairs will not be going off to the streets

12  and resuming his life, he will not be -- in other words, he

13  won't be free on the streets. He will have another 18-month

14  period where he will be under a structured program and I

15  believe CURA program is in Fremont.

16      We're asking the Court consider the recency of the other

17  offenses. There's one thing that I wanted to mention, also,

18  with respect to his parole.

19      You heard testimony by Mr. Mairs that one of the reasons

20  why he did not want to report to his parole agent in Chico

21  was because he had no resources there, no family, no job.

22      And as I mentioned in my papers, at one point, his

23  situation was so desperate that he had to pitch a tent and

24  call it his residence, and he did use that tent as his home

25  for awhile, but did he come back here and it's clear that,

26  once he was back here, he was able to function.

27      He got a job. You heard testimony from one of the

28  witnesses who testified about Mr. Mairs' character and

1    Mr. Mairs was an excellent employee when he worked for, I

2    believe it was Whole Foods, excellent employee, was very

3    stable, very reliable and trustworthy.

4        So we're talking a man with employable skills and

5    promise.

6        But he's already demonstrated those and I think the

7    Court, if you take those into consideration, will establish

8    that he does have a track record for working.

9        But before we get to that point, Mr. Mairs is willing to

10   ask the Court to allow him to be given a grant of probation

11   so that he can go to the program, and it's not a

12   fly-by-night program.  It's a well established, reputable

13   program.

14       And I do have the outline of the program for the Court's

15   information, if you want to look at it.  It's available.

16       Mr. Mairs wanted to address the Court, as well, if he

17   may.

18            THE COURT:  With regard to the Romero motion?

19            MR. OLIVEROS:  We'll hold off until we get to the

20   sentencing part, after Romero.  As the Court knows, the

21   Court can consider many factors in deciding whether you want

22   to grant Romero, and the facts that I just mentioned, I

23   think, are relevant factors.

24       The fact that he was convicted of a crime not involving

25   violence -- and I understand that there was a skirmish as he

26   tried to leave the store.  You heard testimony by Mr. Mairs

27   about that skirmish, that he was being outnumbered by these

28   other people, and the reason I bring that up is, I don't

1    want this big argument over the fact that some violence was
2    involved.  He wasn't convicted of a violent offense in this
3    case and, also, there's a growing trend which may be on the
4    November ballot -- I believe it is going to be on the
5    November ballot -- which will only require a strikable third
6    offense to be a violent offense, only, for a person to
7    qualify under the three strikes law.
8         And since this offense here was a non-violent offense, I
9    would ask the Court to take that into consideration.
10        THE COURT:  Well, help me understand.  The
11   understanding of the situation now, your client's looking
12   at -- you're requesting I strike this 211 prior because, if
13   I do that, then that removes the presumption of
14   ineligibility for probation.
15        MR. OLIVEROS:  Correct.
16        THE COURT:  I mean, this is not a situation where
17   the base term gets doubled.
18        MR. OLIVEROS:  This is a situation where the base
19   term gets doubled if the Court does not grant --
20        THE COURT:  I thought probation, they're only
21   recommending -- they didn't say anything in their
22   recommendation for doubling the base term.  The
23   recommendation is simply four years.
24        MS. FORT:  I'm sorry, that was an error.  It should
25   be doubled.
26        THE COURT:  All right.  I thought so.  And then the
27   probation, who I think have more knowledge about the use of
28   the three strikes law than I do, I thought, "Well, maybe

318

1    it's not a strikable offense," but it is.  The prior 211 is

2    a violent felony.

3         MR. OLIVEROS:  Yes, Judge.

4         THE COURT:  So he's looking at, if I double the

5    aggravated term, he'd be looking at eight years.

6         MR. OLIVEROS:  Looks like he would be looking at

7    six years plus one year on the prison prior.

8         THE COURT:  You don't double the prison prior?

9         MR. OLIVEROS:  No, just the base term.

10        THE COURT:  So seven.

11        MR. OLIVEROS:  Seven years.  Now if the Court does

12   dismiss the strike, he still could be looking at prison, but

13   not for the doubled sentence, so he can be looking at four

14   years, which is indicated in the probation report.

15        And I'm not sure, actually, if that was a recommendation

16   or error, but probation's recommendation is for four years.

17   But we would ask the Court to -- and I'll get to the

18   sentencing part after the court makes a ruling on the Romero

19   request.

20        THE COURT:  All right.  Let me hear from the

21   District Attorney with regard to whether I should exercise

22   my discretion and strike the prior.

23        MS. FRUGOLI:  I think Mr. Skebe fully set forth the

24   People's position as to why you should not do that.  And I

25   think it should be noted that we did already extend to this

26   defendant an extreme benefit by striking one of his other

27   striked, and I think it's a little disingenuous to blame the

28   parole agency for paroling him to the very place where he

1    committed his crimes.

2       One of his robberies was committed in Tracy, and the

3    other one was committed in Chico, so that was his business.

4    He chose to pray upon the victims in those communities, and

5    if he has his family support, including a wife and a child,

6    you would query why they couldn't support him in whatever

7    location he is paroled.

8       So I would submit it and concur with the Court's

9    indication that that strike shouldn't be stricken.

10       Also, as far as probation issues, there's also the 1203

11    (E)(4), and probation has already found that the

12    defendant -- that this is not the type of defendant where

13    the Court should find an unusual circumstance.

14       So under two different provisions -- I know I jumped

15    ahead a bit -- but under the two provisions, the defendant

16    was found not suitable or eligible, and I would submit it on

17    that.

18          THE COURT:  Mr. Oliveros, I'll give you the last

19    word on this issue.

20          MR. OLIVEROS:  I don't believe there was any

21    robbery in Tracy.  Mr. Mairs indicates he's never been to

22    Tracy, so what we're looking at is the Chico robbery.

23          THE COURT:  And then, there was the federal bank

24    robbery.

25          MR. OLIVEROS:  And the federal case.  So we have no

26    information about anything in Tracy.

27          MS. FRUGOLI:  I'm looking at the exhibit, one

28    submitted by Mr. Skebe.  It says, "Tracy, second degree

1   sentence from Yuba County," so maybe that's where the prison

2   was that he was sent to.  I could have misstated that.  It

3   says August 2001, and actually it does say, "CASP," which

4   actually would indicate a State Prison commitment, so I

5   misstated that.

6       There is, on the page before that, an indication he was

7   arrested on a bench warrant out of Orville in the year 2000.

8           MR. OLIVEROS:  Looks like he went to Tracy for the

9   Reception Center, after he was sentenced to prison.

10          MS. FRUGOLI:  So I did misstate that, and I

11  apologize for that.

12          THE COURT:  Mr. Mairs, I'm not inclined to strike

13  the prior conviction, as I indicated tentatively.  And after

14  hearing both counsel's argument, I just don't think this is

15  an appropriate case where I should exercise my discretion

16  and strike that 211, second degree robbery conviction out of

17  Butte County.

18      It was fairly recent.  It involved a knife.  It was, in

19  essence, an Estes robbery, which means that it was an

20  aggravated petty theft.  When they tried to stop you from

21  leaving them, you used a knife to try to escape.

22      I'm also exercising my discretion to deny that request

23  because I cannot ignore the fact that you were convicted of

24  armed bank robbery in 1986, and that, to me, suggests that

25  there's a long history here of violence and that you're

26  willing to use weapons to effectuate theft of property to

27  support what appears to be a very long history of drug use.

28      It is interesting to me that you're almost like a Jekyl

1    and Hyde.   I get a sense you're probably the kind of person

2    that people like.  You're friendly.  You seem to be fairly

3    responsible and hard working and have the trust of people

4    that know you.

5        But they see a different side of you than I do.  I see a

6    side that has been given a lot of opportunities.  But

7    whether it's by manipulation or selfishness or immaturity

8    or, I don't know, you continue to do things that just make

9    no sense.

10       The whole case, the whole defense in this case, where

11   you were arguing that you did it as some kind of joke, here,

12   you know, you're an abscond from parole and you know there's

13   cameras going on and you then secrete these hole saws, it

14   just is really bizarre.

15       The store had experienced a lot of theft of hole saws

16   and they can never connect those with you.  It's a case that

17   I'm puzzled with why you did what you did.

18       It's hard to believe, sometimes, what people do.  Maybe,

19   as you've indicated, you were trying to get caught, trying

20   to get someone to help you; and, although, the jury didn't

21   find you guilty of the methamphetamine in your car, I think

22   they just never felt they could connect that to you, other

23   than, it was your car.  It's only your crap in the car, but

24   I think, probably, out of sympathy, they decided not to

25   convict you of the methamphetamine.

26       So I'm going to deny the request to strike the prior.

27   Before we proceed further, I'm going to interrupt this

28   proceeding, if I could, Mr. Oliveros, and take a couple of,

322

1   what I hope, are brief matters before we proceed to

2   sentencing, if that's okay, because I promised Ms. Miles I

3   would do so.

4                    (Whereupon, unrelated matters

5                     were heard, reported but not

6                     transcribed, herein.)

7               THE COURT:  We're back on Mr. Mairs' case.  He's

8   present with counsel.  Ms. Frugoli for the People.

9   Ms. Fort with the Probation Department.

10      This is now the time ask place set for sentencing in

11  this matter.  Any lawful cause why judgment and sentence

12  should not now be pronounced.

13              MR. OLIVEROS:  No.

14              THE COURT:  Do you waive arraignment for judgment

15  and sentencing?

16              MR. OLIVEROS:  Yes.

17              THE COURT:  The issue for me, folks, is whether,

18  based upon the nature of this offense, whether this should

19  be aggravated or not.  So if it's not aggravated, then he

20  would be looking at two years, plus two, so it would be a

21  four plus one, would be five.

22      Or whether the aggravated facts outweigh the mitigated

23  facts, such that it should be aggravated to the three years,

24  which would make it seven.

25      So that's the dispute I'm having.  That's in my mind.

26  That's where I'm struggling.  So I'm interested to hear

27  comments from both sides.

28      Mr. Oliveros?

1    MR. OLIVEROS:  Yes, Judge.  First of all, I believe

2  that now, based under the new United States Supreme Court

3  case Blakely vs. Washington, which was just decided, I

4  believe, June 24th, which overturned a sentencing, a

5  kidnapping sentencing, in the State of Washington, in which

6  the defendant was given a sentence and then a 10-year

7  enhancement, and the Supreme Court justices followed and

8  expanded Apprendi and overturned the conviction, and they

9  held that it is a jury determination for a person to have

10  given or been sentenced to aggravating factors and not a

11  judge or judicial determination.

12    And aggravating factors must be found by a jury beyond a

13  reasonable doubt based under this new sentence.  California

14  sentencing schemes have the low, mid and aggravated term,

15  and the middle term is the presumptive term.

16    And based on the Blakely holding, if the Court -- the

17  Court should be limited, at this point, to the middle term

18  in that a jury did not find any aggravating factors, and I

19  believe, and many people who have been following the case,

20  many observers, believe, that the person, the defendant, may

21  now have to either admit aggravating factors or a jury must

22  also find aggravating factors beyond a reasonable doubt.

23    Because, under the case of Apprendi, which was a Kansas

24  case, the sentencing scheme had to be changed such that the

25  prosecutor now has to allege aggravating factors.

26    THE COURT:  Have you looked at the state changes

27  that Kansas made in their statutes after Blakely or after

28  Apprendi?

1    MR. OLIVEROS:  No.

2    THE COURT:  You might, because they're real similar

3    to California.  So most people in my position think -- and

4    this is an open issue, and I think you're making a good

5    point, so this may be an issue on appeal -- that in the

6    majority opinion in Blakely, they talked about the fact that

7    Kansas changed their statute in light of the Apprendi, and

8    the changes which I downloaded off West Law are consistent

9    with what California does; and federal sentencing

10   guidelines, as well.

11        But, essentially, it says, as long as the Judge stays

12   within that range -- which, the range is set by law to be,

13   in this case, for Mr. Mairs, the top would be three years,

14   then having been convicted of a prior violent felony, then

15   it's doubled, and the aggravating fact of one year prior

16   prison term adds to that under 667.5.

17        My opinion -- and I think the prevailing view among the

18   judges, which may differ from the defense counsel bar -- is

19   that our sentencing laws are within the guidelines

20   established by Blakely.

21        However, you've made an objection to the Court and

22   that's noted for the record.

23        MR. OLIVEROS:  And just to be certain, I do object.

24   If the Court is inclined to sentence him to an aggravated

25   term, I would object under Blakely, since Mr. Mairs has not

26   admitted to any aggravating factors and none have been

27   determined by the jury beyond a reasonable doubt.

28        Your Honor, I would ask that the Court allow

1    Mr. Mairs' -- she's not officially his adopted mom.  She
2    took him in when he was around seven years old.  She wanted
3    to make a statement to the Court.

4           THE COURT:  I want to inquire if the prosecutor has
5    any objections.

6           MS. FRUGOLI:  No.

7           THE COURT:  Then, she may.

8           MR. OLIVEROS:  Just for your information, she's
9    hard of hearing.  She can hear you, but it's difficult for
10   her to hear others.

11       So if you could please stand and talk to the Judge.

12          THE COURT:  Your name, please?

13          MS. BANDUCCI:  Olga Banducci, B-a-n-d-u-c-c-i.
14   Yes.  I'm going to start with a sentence that "depression
15   leads to frustration."  This I learned when I was taking a
16   psychology class, and I always been thinking, always, in
17   this case, as you know.

18          THE COURT:  Why don't you come a little closer
19   because I'm having trouble hearing you now.  Now speak up
20   nice and clear, too, because, see my court reporter, Tammy,
21   here, she wants to hear you, as well.  That's the lady right
22   here.

23          MS. BANDUCCI:  Okay.  Shall I start again?

24          THE COURT:  No, I think we're okay.  You can start
25   wherever you feel comfortable.

26          MS. BANDUCCI:  So this boy we know came since he
27   was very little boy, and my kids were playing together in
28   Mill Valley by the swings, by the baseball.

1    So I never thought he was going to end up like this,

2    never in my life. But I don't believe that we supposed to

3    punish them really hard, and never in jail, because then an

4    apple, bad apple, is going to be contaminated, you know,

5    contaminated.

6    This boy has been, always, with a very, very good heart

7    and very good behavior. He had the principal since the

8    beginning, good principals, because when they kick him out

9    or he would run out of home, he was very little.

10   And then he would go to my house. He would never bother

11   us. He would stay underneath the house and he would make --

12   he's a very unique boy because he likes the sheets clean,

13   sheets and blankets, and everybody, you know, so he would be

14   lying down there, hiding or protecting himself with us, and

15   this is a very sentimental thing to me because he never

16   bothered us. He never did anything wrong to my kids.

17   The four of them, they grew up together. And I never

18   accepted all his behavior and neither my kids. My kids were

19   really mad at him, always, trying for him to change a little

20   bit, or whatever, but I have so many things towards his

21   behavior and my kid's behavior.

22   White people is different. Sometimes, because they grew

23   up like that, without laws. He have parents, but they

24   didn't know how to love him. So, actually, I'm going to

25   say, it's not his fault.

26   But later, it's his fault 100 percent. But still, we

27   have all the teaching of our kids, all the examples. This

28   boy, for me, has been good and respectful. He always was

1   treating us like mom and dad, and he used to say, "My mom is

2   Olga.  My dad is Dino."

3       And then, I feel, right now, I feel like, "My God, did I

4   raise that kind?"  No, because, he has his own character and

5   patience and completely different genes, punishing too much

6   is not very good.

7       Sometimes, I think, if they're in jail, he can do all

8   the work of the electricity, you know, and then I was

9   thinking, maybe, that's why they are putting him for more

10  time, so they can use him, and I just beg you not to be so

11  hard with him, please.

12          THE COURT:  Thank you, ma'am.

13          MR. BANDUCCI:  He's always welcome in our home.

14          THE COURT:  Thank you, sir.

15          MR. OLIVEROS:  And, your Honor, Mr. Mairs wanted to

16  address the Court.

17          THE COURT:  Any objections, Ms. Frugoli?

18          MS. FRUGOLI:  No.

19          THE COURT:  Mr. Mairs?

20          MR. OLIVEROS:  Judge, because of his vocal

21  problems, he would like for you to have a copy in the event

22  you can't hear him.

23          THE COURT:  Do you want to make this part of the

24  record?

25          MR. OLIVEROS:  Yes, Judge.

26          THE COURT:  Written statement will be marked as

27  Defendant's Exhibit A, for purposes of the sentencing

28  hearing, and admitted into evidence.

1    Wait just for a moment.

2              THE CLERK:  Defendant's A, marked for

3    identification.

4                   (Defendant's Exhibit A, written

5                    statements, marked for identification

6                    and received into evidence.)

7              THE COURT:  Go ahead, sir.

8              THE DEFENDANT:  Honestly, Judge Caskey, I sincerely

9    apologize to the Court, the People, the victims, my family

10   and friends, for my behavior in which I'm before you.

11       I feel most ashamed and embarrassed by my actions.

12   During my incarceration here at the Marin County Jail, I

13   have taken a lot of time to seriously reflect on the poor

14   choices I've made throughout my life, the consequences I

15   have suffered, and what I must change about myself to

16   prevent this from happening in my future.

17       The majority of my life, I have struggled with drug

18   addiction, and when I've remained clean and sober, I've

19   fallen short of the life skills necessary to succeed.  The

20   only drug treatment I completed was a 28-day program which

21   amounted to putting a bandaid on a very deep wound.

22       I began the Marin County Jail pre-treatment program in C

23   Pod June 11th, 2004.  I have wholeheartedly given myself to

24   the programs of NA and AA and have become actively involved

25   in literacy, critical reading and writing, spirituality and

26   Marin Abused Women's Services.

27       I'm learning the depth of my disease and the negative

28   learned behaviors I must change.  The problems and issues

1   I'm confronting in pre-treatment have been very difficult

2   and painful for me, so I want this to grow in a positive

3   direction.

4       I have applied and was accepted to CURA, a highly

5   structured, longterm residential treatment program.  My

6   goals are to learn new life skills, build my life on a clean

7   and sober foundation, become a respectful husband, father

8   and role model for my children, an asset in the community

9   and continue and further my trade as a skilled electrician.

10      Again, I apologize to all.  I understand the jury's

11  decision in my case.  I take responsibility for what I've

12  done and sincerely ask the Court to consider a program of

13  rehabilitation and drug treatment that would benefit, not

14  only me, but society.

15      Respectfully submitted, David Mairs.

16      MR. OLIVEROS:  So to conclude, your Honor,

17  Mr. Mairs is asking the Court for a mitigated term and we're

18  asking the Court to stay the prison prior so that the total

19  term would be 32 months, and I will ask the Court to take

20  into consideration the hardship it would be on his daughter.

21  He does have a four-year-old daughter with his wife.

22      His wife, Darcy, is present in the courtroom, as well as

23  his two friends, Adam Potter and Nick Stevenson.  He also is

24  the father of some twins.  I believe they're approximately

25  eight years old -- 10 years old -- and another daughter who

26  is approximately six years old.  And he does have an older

27  son who is 12 years old.

28      So based on all those factors and some of the factors I

330

1   mentioned in the Romero request, we're asking the Court for

2   a mitigated term and staying the prison priors.

3          THE COURT:  Ms. Frugoli?

4          MS. FRUGOLI:  I would concur with the probation

5   recommendation.  It's not always that they, number one,

6   recommend prison, and, number two, recommend an aggravated

7   term.  I think they fully and accurately did set forth the

8   reasons why it should be an aggravated sentence.

9          I think it's a little disingenuous to state that he

10  wants to be a father when he's got, I guess, a total of five

11  children, by my count, and it's most disturbing, someone

12  like Mr. Mairs, who finds himself before the Court because

13  of his own conduct, when he actually has skills that very

14  few defendants who find themselves in this position have.

15         And he actually has the life skills and the job skills

16  and the capability and, apparently, the means to find

17  legitimate employment which so few people have when they

18  come before this court.  And I think it's most unfortunate

19  that he has done nothing with those skills and continues to

20  commit these crimes.

21         I think it is disingenuous that he claimed to be clean

22  and sober, yet, now, apparently, is acknowledging that he

23  wasn't.

24         I think the Court hit the nail on the head when you

25  talked about his manipulation and I think, perhaps, it's his

26  intelligence and the skills that he does have that has

27  allowed him to manipulate his way to this position.

28         So other than that, I would concur with the probation

1  recommendation of the aggravated term, and I would submit
2  it.

3      I would also note, I think that it's a very important
4  factor for the Court to consider the fact that two parole
5  agents have stated that the defendant, in their view, is not
6  ready to change and that he, in fact, had absconded from
7  parole at the time of this incident.  So they were certainly
8  unable to supervise him.

9      I don't know why you would think less resources, our
10  probation, could supervise him.  And with that, I would
11  submit it.

12      THE COURT:  Well, as I've indicated -- did you want
13  to respond, Mr. Oliveros?

14      MR. OLIVEROS:  Very briefly.  With respect to
15  probation's recommendation, I believe counsel said they
16  hardly or they hardly ever make prison recommendations, it's
17  the Probation Office's policy to recommend prison on a
18  strikes offense, so that's a standard recommendation for
19  prison.  They always do that when there's a strike involved.

20      One thing I believe I forgot to mention was, I rarely --
21  maybe once in my 16 years -- have gotten a letter from a pod
22  deputy, a deputy bailiff, writing on behalf of an inmate and
23  it kind of goes to show you that Mr. Mairs is a person that
24  can -- he can comply.  He can cooperate.  And for the
25  Probation Officer or parole to have made a statement that
26  Mr. Mairs cannot comply, when that is based on performance
27  of several years ago and not now, Mr. Mairs has the
28  resources in Marin County, or would have had them had he

1  been granted probation in Marin County, and not any

2  resources in Butte County.

3        THE COURT: I hear you, and acknowledge that

4  there's some truth to that statement. The problem I'm

5  having, I still am puzzled by Mr. Mairs. It appears that

6  when he's in a structured environment -- and there's not

7  very much more structured environment than the Jail -- he

8  does very well. And it could be a reflection on the fact of

9  his life upbringing, his parents, his childhood, where he

10  didn't have structure and he just doesn't function well in

11  society when he doesn't have that kind of structure.

12     He's got a history here going back to 1986, of criminal

13  conduct with periods of time where he's okay, but throughout

14  all that time period, it appears that the substance abuse

15  issue is driving much of his poor decision making.

16     But all of that, counsel, I want to look at this very

17  carefully and go over so that there's a clear record of what

18  I'm required, by law, to do and what I have the discretion

19  to do.

20     As I've previously ruled, I'm not inclined to strike the

21  prior conviction which triggers that, pursuant to 1203

22  (E)(4), he's not eligible for probation, unless I make a

23  finding that unusual circumstances warrant a grant of

24  probation.

25     The facts in this particular case, by themselves,

26  without any consideration of the defendant and his

27  background, would suggest this is not a particularly

28  egregious case.

1    If you believe that he wasn't the person who was ripping

2    off the store for some period of time -- and there's no

3    evidence before the Court that he was that person -- but

4    that he came in, he heard -- if I recall the testimony, he

5    came in, he overheard some conversation among store security

6    people or store employees about the theft situation of the

7    hole saws, and then, to test the system or to make fun of

8    it, he then takes the hole saws out of the boxes, walks down

9    an aisle, sees the camera, security camera, and then hides

10   the hole saws and then hides the boxes and then leaves the

11   store.

12    Here's an individual who does not want to draw attention

13   to himself, if you think he's logical and rational.  And,

14   yet, he does.  So he's either not logical or not rational,

15   which, perhaps, is true, so he gets caught exiting the store

16   and he's confronted.

17    He's also driving a vehicle that's full of stuff,

18   including some methamphetamine.  Did he want to get caught

19   because he was trying to escape from his responsibilities to

20   his new wife and child?  Maybe.  Maybe that's what this is

21   all about.  It's his desire to escape having to be

22   responsible.

23    I'm not a psychologist, nor do I wish to be, but this is

24   a puzzling case in which maybe, at some point, Mr. Mairs is

25   going to write to me after he's had years of reflection to

26   explain what happened here.

27    However, looking at the situation here, having found

28   this is not an unusual case and he's not eligible for

334

1    probation -- so I don't need to address that further.

2    Probation is not going to be an option in this case.

3        The question is, again, whether or not this should be

4    aggravated or mitigated or should I go with the presumptive

5    term?  The facts that are circumstances in aggravation under

6    Rule 4.421, I find that probation has accurately stated

7    those and I'll state them for the record.

8        The defendant has engaged in violent conduct -- this is

9    4.421 (B) -- and that he's got two prior convictions

10   involving use of force.  One was an armed robbery at a bank

11   and the other was a petty theft of a store up in Chico,

12   which, when he was confronted, he used a knife to try and

13   effectuate an escape, which is a robbery, second degree

14   robbery.

15       The second consideration that I believe is true -- I do

16   not agree with 4.421 (B)(1)(2), given that I don't think

17   this recent offense is as serious as his prior offense

18   because, for one reason, he wasn't armed in this case, but

19   in this, number three is correct, he's served a prior prison

20   term which serves as a basis for the 667.5 PC enhancement.

21   He's also served a term in federal prison.

22       He was on probation -- actually, he was on parole at the

23   time of this offense, even though he had absconded from

24   parole, and the fact that he'd absconded from parole is also

25   a circumstance in aggravation, and that his prior

26   performance on parole was unsatisfactory.

27       His rationalization, which is really what it is, of not

28   fulfilling the terms of his parole and not keeping in

1  contact is, at very best, immature and irresponsible, giving

2  him some benefit of the doubt. I'm more inclined -- I think

3  what it really was, he was using methamphetamine again and

4  he knew he would get caught and he didn't care. He was down

5  here doing whatever he was doing and he didn't have any

6  sense -- well, he did have a sense of what he was doing was

7  wrong, but he did not, I guess, think he was going to get

8  caught, which is inconsistent with his conduct at the store

9  in asking to get caught.

10     Then you look at the circumstances in mitigation which

11  is Rule 4.423. I don't agree with the Probation Department

12  that the mitigating -- that there's any mitigating factors

13  in this case. The facts relating to this crime, I don't

14  find that he was participating under circumstances of

15  coercion or duress or that it was partially excusable for

16  some other reason.

17     I further do not find that he exercised caution. I

18  think just the opposite. He wasn't armed, that's true, but

19  I don't find that that's a circumstance in mitigation in

20  this case.

21     And with regard to 4.423 (B), I do not find that he was

22  suffering a condition that would significantly reduce his

23  culpability for the crime. There's no evidence before the

24  Court that he was under the influence of any drugs at the

25  very time he committed this offense.

26     He may have a drug addiction which motivates many of his

27  antisocial behaviors, but I don't find that there's any

28  facts that would mitigate, in this case, his conduct on the

1  occasion in question with regard to the facts relating to
2  the defendant.
3      The factors in aggravation are clearly decisive and so
4  the Court will be imposing the upper term.
5      With regard to the criteria affecting probation, since
6  I've made a determination that this is not an unusual case,
7  then there's no reason for me to state why I'm denying
8  probation.
9      However, just to be on the safe side, I've looked at
10  4.414, and I would find that the criteria showing that
11  probation should be denied outweighed those reasons why I
12  should grant probation.
13      So the Court will impose, for Count II, the aggravated
14  term of three years, which will be doubled pursuant to the
15  three strikes law, as required by law, so that's six years.
16      There's a one-year enhancement, which will not be
17  stayed, under 667.5 (B).  So he is ordered to serve seven
18  years in prison.
19      He's advised that there's going to be a three-year
20  period of parole upon his release from prison.  If he
21  violates parole, he would then be ordered -- could be
22  ordered to serve up to an additional year in prison, and
23  that parole could be extended to a total of four years.
24      He's ordered to pay a $20 fine pursuant to 1465.8.  Pay
25  a restitution fine in the amount of $600 pursuant to 1202.4,
26  plus an additional $600, which is suspended pending
27  successful completion of parole.  If he doesn't complete
28  parole, then that $600 additional penalty is imposed by law.

1    As to Count IV, he's ordered to serve six months county

2    jail, concurrent with any sentence he's already served,

3    which is, essentially, a time-served sentence.

4        Any questions, Mr. Oliveros?

5            MR. OLIVEROS:  Yes, your Honor.  I don't want to

6    belabor the point, but I did voice my objection to the

7    aggravated term before you even made a ruling on it.

8        So just so the record is clear, I do object to the

9    aggravated term under Blakely vs. Washington.

10           THE COURT:  Noted.  And I think you're covered.

11   But I think that's a good idea, to make it very clear you

12   object.  Mr. Mairs, obviously, understands his right to

13   appeal not only the jury's decision but the Court's

14   sentence, and, Mr. Oliveros, you understand your obligations

15   in that regard?  You have 60 days in which to file a notice

16   of appeal, and I will not take any appeal personally.

17           MR. OLIVEROS:  Credits, your Honor?

18           THE COURT:  Yes, we need to ascertain his credits.

19   I'm showing that he has a total of 208 actual, good time,

20   51, work time, 51, for a total of 310.

21       That would be from 12/17/03 to 4/20/04, which would be

22   125.  And then, 4/21/04, June 28th, '04, of 69, and then

23   June 29th, '04, to July 12th, 14, for a total of 208, plus

24   good time, work time, 310.

25           MR. OLIVEROS:  I have a slightly different figure.

26           THE COURT:  Good.

27           MR. OLIVEROS:  I have 194 actual.  I'm sorry, I

28   have 209 actual days and 51 good time, 51 work time, for a

1  total of 311.  He was arrested on December 17th of 2003.

2           THE COURT:  December what?

3           MR. OLIVEROS:  December 17th.  From December 17th

4  through the 31st, that's 15 actual days, and today is July

5  12th, that's the 194th day of the year.

6           THE COURT:  I gave you 209, counsel.

7           MR. OLIVEROS:  I'm sorry.

8           THE COURT:  I had 208, but I'll give you the extra

9  day.  I have some mercy in my heart.  209, plus 51, plus 51,

10 total 311.  We're this recess.  Thank you.

11               (Whereupon, the proceedings were

12                concluded.)

13                    ---o0o---

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  STATE OF CALIFORNIA     )

2  COUNTY OF MARIN         )

3          I, TAMARA WILSON, an Official Shorthand Reporter of

4  the State of California, County of Marin, do hereby certify

5  that the above proceedings were reported by me, a

6  disinterested person, and were thereafter transcribed under

7  my direction into computer-aided transcription and that this

8  is a true and correct transcription of said proceedings.

9          I further certify that I am not of counsel or

10 attorney for either or any of the parties in the foregoing

11 proceedings and caption named, nor in any way interested in

12 the outcome of the cause named in said caption.

13

14

15     Dated:  The 29th day of August, 2004.

16

17

18

19

20     _Tamara Wilson_

21     TAMARA WILSON, CSR# 10410

22

23

24

25

26

27

28

340

DAVID MAIRS T25433 1408V
SQSP SAN QUENTIN CA-
94974

POSTAGE-DUE 1.32

RECEIVED

APR - 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PRO SE

United States District Court
Northern District
450 Golden Gate Ave.
San Francisco, CA 94102

Legal Mail